IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DANIEL M.,

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 1:25-cv-01050-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Daniel M.[1] seeks judicial review of the Commissioner's final decision denying Social Security disability benefits. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is AFFIRMED.

## I. Medical Opinion Evidence

### A. Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to*

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

*Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship;

specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

**B. Nurse Practitioner John Byers**

Nurse Practitioner Byers completed a Treating Source Statement on March 11, 2021, after plaintiff began treatment with Byers less than one week before on March 5, 2021. Tr. 935. The ALJ properly discounted Byers' opinion because of the "very short treatment relationship" and because the opinion "does not document any clinical findings to support the[] extreme limitations" he endorsed. Tr. 1000. As the ALJ observed, Byers' examination notes indicate that while plaintiff exhibited tenderness and pain in his left back, he was not in acute distress, had normal appearance, had normal musculoskeletal range of motion, and his motor function, coordination, and gait were intact. Tr. 945-46.

//

//

**C. Douglas Col, PhD**

Dr. Col conducted an examination of plaintiff and prepared an initial report in March 2021. Tr. 940-42. Later, in June 2021, Dr. Col performed psychodiagnostic testing, Tr. 962, and completed a Medical Source Statement. Tr. 975. The ALJ found Dr. Col's opinion persuasive with respect to certain neurological findings. Tr. 1002. However, the ALJ did not find persuasive Dr. Col's opinion that plaintiff would be off task 10 percent of the day or absent two days per month because of his depression; the ALJ found there was no "objective support" for this opinion and Dr. Col did not "provide any further explanation" to support it.

In his report, Dr. Col stated that plaintiff's "clinical presentation strongly suggested that he is struggling with significant levels of depression" and "[i]t seems likely that [plaintiff's] difficulties with focus, attention, and concentration are related to his depression," along with "at least some of his short-term memory issues." Tr. 970. As the Commissioner correctly observes, Dr. Col stated only that it was "likely" that plaintiff's limitations were related to depression. *See Bischoff v. Kijakazi*, No. 22-16022, 2023 WL 5319251, at *1 (9th Cir. Aug. 18, 2023) (finding that the ALJ, in rejecting a medical opinion, "properly considered the use of the word 'probably,' which suggested equivocation in the opinion"). Regarding the lack of "objective support," the ALJ elsewhere recounted plaintiff's 2021 hearing testimony in which he described "'slumps' of depression once per month," but explained "that most days his depression is not a real issue." Tr. 995; *see* Tr. 48 (plaintiff's testimony regarding "slumps" that were "hit or miss" and were "not really a huge issue" on "most days," and occurred "[m]aybe once a month," although "not quite"). The ALJ referred to plaintiff's 2024 hearing testimony where plaintiff described that his symptoms now lasted a day or two, which the ALJ noted was an improvement over the three or four days plaintiff was experiencing before. Tr. 998. Finally, the ALJ found that plaintiff's

treatment for depression was conservative, including Zoloft prescribed by his primary care provider, with no counseling or any further treatment. Tr. 1004. Thus, the ALJ properly discounted Dr. Col's opinion for being unsupported and inconsistent.

**III. Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the

intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff testified that he has neuropathy in the T7 vertebrae of his spine that causes him to feel a sharp, stabbing pain to the left of his spine that "wraps all the way around to the front." Tr. 1027. The pain fluctuates and is long-lasting, and plaintiff experiences relief only when he lies flat on his back, which he usually has to do twice a day. Tr. 1027–28. He resides in a 24-foot travel trailer, and leaves only to drive to medical appointments and to go to the mini market, which is two minutes away; otherwise, his girlfriend and mother bring him things. Tr. 1028. He cannot drive longer distances because the vibrations in the road aggravate his nerves. Tr. 2019. He can dress and bathe himself but it is painful, and he probably showers once a month. Tr. 1028-29.

The ALJ first found that plaintiff's "testimony that he does nothing all day, every day is contradicted by his own treatment records, which show he plays video games and spends time with his girlfriend and parents." Tr. 998; *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that, in assessing a claimant's testimony, the ALJ may "consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct" and "whether the claimant engages in daily activities inconsistent with the alleged symptoms"). Here, plaintiff did not testify that he did "nothing" all day; he testified that he did "nothing" other than watch television and use the microwave). Watching television and using the microwave are not materially inconsistent with playing video games and spending time with family, particularly where the record shows the visits by plaintiff's girlfriend and mother were to assist him. Tr. 1633-34, 1883, 1904.

The ALJ also discounted the severity of plaintiff's symptom complaints because of inconsistencies in the record regarding why he left his grocery store job. The ALJ observed that plaintiff testified he stopped working at his grocery store job due to pain. Tr. 999; *see* Tr. 1025 (testifying the job ended because of "[p]hysical limitations" due to disability and "not being able to maintain a work week"). The ALJ noted, however, that there were no medical records indicating that plaintiff left the job due to either pain or difficulty performing the physical functions of the job, but showed instead that plaintiff enjoyed his job, was working a lot, and making money. *Id.* (citing Tr. 431 ("He stated he likes work, despite working so much."); Tr. 437 (plaintiff stated, "Tired, I've been working a lot lately. Outside of that, I'm doing really well and making good money").

The ALJ also discounted plaintiff's subjective symptom testimony because he told consultative examiner Michael O'Connell, Ph.D., that he "was missing work due to going through [opioid] withdrawals." Tr. 999. Plaintiff explains he told Dr. O'Connell that he had developed a dependency on opiates that were prescribed to treat his pain and entered rehab because he began missing work. *See* Tr. 1631 (describing that plaintiff began using opioid analgesics in 2015, developed a dependency, and decided to enter rehab because he began missing work); Tr. 1633 (describing plaintiff entered "substance abuse treatment because, on occasions when he could not acquire sufficient opiates to eliminate withdrawal symptoms, he would skip work which he found quite distressing."). Nevertheless, as the ALJ observed, the record contains documentation that in April and May 2017, close in time to when plaintiff quit his grocery store job, he reported "working so much," "working a lot," and "making good money." The ALJ reasonably determined that this was inconsistent with plaintiff's testimony that he could not physically perform the tasks required for the job and left for that reason.

Additionally, the ALJ found that plaintiff was "treated conservatively, with only medication for pain (gabapentin and suboxone), and duloxetine for depression," and his "medications have not changed substantially over time." Tr. 999. Plaintiff argues the ALJ failed to appropriately consider that he had epidural steroid injections, which are not "conservative" and which did not provide "long-term significant relief." Pl. Br. 16 (citing *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (finding facet, epidural, and steroid injections are not conservative)); *see* Tr. 1443 (November 2019: "He [has] tried injections in the past with no long-term significant relief."); Tr. 344 (nerve block injections at T7 and T8-9 on April 9 and 23, 2015). But the ALJ recognized that plaintiff had "intercostal nerve neuropathy, for which he underwent nerve block injections and cryotherapy denervation, most recently in 2016." Tr. 1001. The ALJ also noted that while plaintiff requested it again in 2017, there is no indication that he followed up. *Id.* The ALJ further observed that a "[s]pinal MRI in 2018 showed a tiny syrinx slightly over 1 mm, reversal of normal lordosis, and mild cervical degenerative changes; stable patchy central syrinx with maximum 4.7 mm at the T10-11 level; and minimal posterior disc bulges at the mid and lower lumbar spine," and a stable examination since 2014. *Id.* (citing Tr. 570, 1418). The ALJ concluded that "[t]he record does not corroborate the claimant's reported worsening pain, but reflects it is assessed as stable." Tr. 1001. Elsewhere in the decision, the ALJ noted that plaintiff's "reports of being largely bedridden and engaging in minimal activity is contradicted by examination findings documenting full 5/5 strength in all extremities without atrophy and full ranges of motion, with no evidence of sensory deficits." Tr. 1000 (citing Tr. 562). Finally, the ALJ observed that pain management notes reflect plaintiff's pain was five to six out of 10, and that plaintiff appeared to "be obtaining adequate relief and improvement in the ability to function with his pain medications, which [plaintiff] acknowledged." Tr. 1001 (citing Tr. 743 (denying

significant changes and reporting moderate pain of 4/10 and 5/10); Tr. 1422 (observing that with gabapentin and Suboxone, "the patient appears to be obtaining adequate relief and improvement in ability to function"); Tr. 833 (describing pain of 5/10); Tr. 838 (describing pain of 6/10); Tr. 853 ("The patient feels medication regimen provides improved quality of life and functional gain."); Tr. 858 (same); Tr. 768 (rating pain 5/10); Tr. 921 (rating pain 5/10); Tr. 1918 (rating pain 5/10); Tr. 1789 (rating pain 4/10); Tr. 1795 (rating pain 5/10). The ALJ's finding is a reasonable interpretation of the record and supported by substantial evidence.

Because the ALJ provided at least one clear and convincing reason, supported by substantial evidence, to discount plaintiff's subjective symptom testimony, there is no error.

**IV. Lay Witness Testimony**

The ALJ observed that plaintiff's mother and girlfriend submitted third party function reports but did not address them specifically. Tr. 995. The third party reports contain information similar to plaintiff's subjective symptom complaints, and the ALJ discounted plaintiff's complaints with clear and convincing reasons. Those same reasons constitute germane grounds for discounting the lay witness statements, and any error in failing to specifically address the lay witness testimony is therefore harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se."); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (affirming that if an ALJ provides clear and convincing reasons for rejecting a claimant's subjective complaints,

and a lay witness's testimony is similar to those complaints, it follows that the ALJ has provided germane reasons for rejecting the lay witness testimony).

## CONCLUSION

The Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED September 25, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge